572 S.E.2d 288

**R.L. JORDAN OIL COMPANY OF NORTH CAROLINA, INC., Plaintiff,**

v.

**BOARDMAN PETROLEUM, INC., Defendant.**

No. 25544.

Supreme Court of South Carolina.

Heard Sept. 17, 2002.

Decided Oct. 28, 2002.

---

Matthew A. Henderson and Joshua M. Henderson, of Henderson, Brandt & Vieth, P.A., of Spartanburg, for plaintiff.

William M. Grant, Jr., of Grant, Leatherwood & Pitts, P.A., of Greenville; and R. Perry Sentell, III, of Kilpatrick Stockton L.L.P., of Augusta, Georgia, for defendant.

Justice MOORE:

We accepted this case on certification from the federal district court to determine the meaning of the term meet competition in S.C.Code Ann. § 39–5–325(A) (Supp.2002), which provides:

(A) *Except as otherwise permitted to meet competition as provided by this chapter*, it is declared an unfair trade practice and unlawful for any person who is in the retail business of selling motor fuel to sell motor fuel of like grade

and quality at retail at a price which is below the cost of acquiring the product plus taxes and transportation where the intent or effect is to destroy or substantially lessen competition or to injure a competitor.

(emphasis added). We find the term meet competition as used in this section means to meet the existing price of a competitor.

## FACTS[1]

During the pertinent time period, both plaintiff (Jordan) and defendant (Boardman) operated convenience stores in South Carolina. Jordan operated Hot Spot and Boardman operated Smile Gas. Jordan had two Hot Spot stores in Spartanburg County along I–26 located within several miles of two of Boardman's Smile Gas stores.

In July 1998, Jordan began selling Shell brand gasoline at its Hot Spot stores. Shortly after the Shell logo and colors went up at Jordan's stores, Boardman, who did not sell national brand name gasoline, lowered the price of its regular unleaded gasoline, setting it at two cents below the price of the Shell brand gasoline. Jordan responded with its own price reduction, matching Boardman's prices. Boardman lowered its prices again, reestablishing a two-cent per gallon price differential. This cycle of price adjustments continued downward until both parties were selling below cost. The parties continued to sell below cost until early October 1998.[2]

Jordan then commenced this action alleging a violation of the South Carolina Unfair Trade Practices Act (SCUTPA) under § 39–5–325(A). The district court entered judgment for Boardman finding this section did not apply to independent gasoline retailers and that selling below cost was allowed to meet competition.[3] On appeal, the Fourth Circuit reversed

---

[1]. These facts are taken from the Fourth Circuit Court of Appeals' slip opinion in this case.

[2]. According to Boardman's brief, Jordan actually reached below-cost levels first because Jordan pays more for the same grade of gasoline.

[3]. In deciding the case, the district court certified a question to this Court regarding the appropriate standard for reviewing challenges to state statutes on substantive due process grounds. *R.L. Jordan Co. v.*

and remanded with directions that the district court certify to this Court the question whether selling below cost was permissible under the meet competition exception. The question now certified by the district court is:

> Does an independent retailer meet competition by selling below cost at a price that is two cents below the price of the national brand competitor under S.C.Code Ann. § 39–5–325(A) of the South Carolina Unfair Trade Practices Act?

## DISCUSSION

■ Essentially, the novel issue here is whether the term meet competition means a gasoline retailer may sell below cost only to match the price of a competitor and not lower. Here, Boardman sold below cost at two cents less than the price charged by Jordan.[4] Boardman defends this practice on the ground retailers of nationally branded gasoline have a market advantage over independent retailers based on name recognition and customer perceptions instilled by advertising. Boardman contends an independent retailer should be allowed under § 39–5–325(A) to sell at lower prices in order to meet competition from national brand gasoline retailers. We disagree.

The relevant statutory scheme indicates meet competition means to match the price charged by the competition without considering other competitive factors. Section 39–5–325(A) specifically states it is unlawful to sell gasoline below cost [e]xcept as otherwise permitted to meet competition *as provided by this chapter.* The only other provision in this chapter relating to the exemption for meeting competition is S.C.Code Ann. § 39–5–350 (Supp.2002) which provides:

> (A).... Retail sales of merchandise of like grade and quality at a price to meet *existing competition* at any time in any town or locality are also exempt from the provisions of this article. But if such competition is created by any person in

---

*Boardman Petroleum, Inc.,* 338 S.C. 475, 527 S.E.2d 763 (2000). Whether the statute passes constitutional muster remains unanswered by the district court and we express no opinion on the merits of that question.

4. Apparently Jordan sold below-cost only to meet the prices charged by Boardman.

violation of this article or when any two or more persons contend that they are meeting the competition of the other and all would be making retail sales in violation of this article, *except for the above provisions allowing existing competition to be met,* any retailer affected thereby may enjoin all in such category from continuing such practices in any court of competent jurisdiction in this State.

(B)Any person selling motor fuel at wholesale or retail at a price below the actual cost of acquiring the product, including transportation and taxes, claiming exemption from this article on the basis that such sales of motor fuel by that person are at a price to meet *existing competition* under subsection (A) of this section *shall keep and maintain records substantiating each effort to meet the competition,* including the identity and place of business of the competitors whose competition that person is meeting. . . .

The repeated reference to meeting existing competition indicates the legislature intended an exemption for below-cost sales only to match the existing *price* of a competitor. *See Wade v. Berkeley County,* 348 S.C. 224, 559 S.E.2d 586 (2002) (cardinal rule of statutory construction is to ascertain and effectuate intent of the legislature). To construe existing competition to refer generally to any competitive factors, rather than a competitor's existing price, would nullify the prohibition on selling below cost. A retailer could assert any number of factors that affect competition *i.e.,* location, hours of operation, appearance, overhead, customer base, etc., to claim an exemption for meeting competition.

Further, the specific directive in § 39–5–350(B) that a retailer selling below cost keep records substantiating each effort to meet the competition indicates a fluctuating factor such as price rather than a more permanent competitive factor.

Finally, as Boardman acknowledges in its brief, independent retailers generally pay less for gasoline and can therefore sell at a lower price than national brands without going below cost. Independent retailers therefore do have some competitive advantage over the national brands and are not presumptively disadvantaged. There is no support for the argument the

legislature intended to protect independent gasoline retailers over retailers selling national brands.

■ In conclusion, we construe the term meet competition in § 39–5–325(A) to mean to meet the existing price charged by a competitor. A gasoline retailer who sells below cost at a price less than that of the competition does not qualify for the exemption provided in this section. Accordingly, we answer the certified question in the negative.

**CERTIFIED QUESTION ANSWERED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.